UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

_____

UNITED STATES OF AMERICA,            CRIMINAL ACTION

     Plaintiff    Docket No: 1:22-mj-00022-JCN-1


   -versus-


XAVIER PELKEY,

    Defendant
_____

Transcript of Proceedings

Pursuant to notice, the above-entitled matter came on for **Preliminary and Detention Hearings** held before **THE HONORABLE JOHN C. NIVISON,** United States Magistrate Judge, in the United States District Court, Margaret Chase Smith Federal Building, 202 Harlow Street, Bangor, Maine, on the 22nd day of February, 2022, at 9:00 a.m. as follows:


Appearances:

For the Government: Craig M. Wolff, Esquire
      Assistant United States Attorney

For the Defendant: Christopher K. Maclean, Esquire

Also Present: Jennifer Kuhn, U.S. Probation



Dennis R. Ford
Official Court Reporter

(Prepared from manual stenography
and computer aided transcription)

1          (Zoom video hearing.  Defendant present).

2          THE COURT:  Thank you and good morning.  We are

3  here for a preliminary hearing and, if necessary, a hearing on

4  the Government's motion for detention in the matter of the

5  Government versus Xavier Pelkey.

6          We are convened by video conference and, just as

7  we did, Mr. Pelkey, at your initial appearance, if we are to

8  continue to proceed by video conference I need to make certain

9  findings and so I will ask you and counsel some questions and

10  if I can make the appropriate findings, we'll continue to

11  proceed by video conference.  If I cannot, then we'll discuss

12  when we would schedule the matter in the courtroom in-person.

13          So, this hearing is being conducted by video

14  conference as a result of the findings and authorizations set

15  forth in the Coronavirus Aid Relief and Economic Security Act,

16  known as the CARES Act, the Administrative Office's updates on

17  CARES Act provisions for criminal proceedings and this court's

18  general orders.  All individuals who have been granted remote

19  access are reminded of the general prohibition against the

20  photographing, recording and rebroadcasting of court

21  proceedings.  Any violations of those prohibitions could result

22  in the imposition of sanctions.

23          The record should reflect that Mr. Pelkey is

24  joined with counsel, Mr. Maclean.  Mr. Maclean, have you had a

25  chance to discuss with Mr. Pelkey his right to an in-court,

1  in-person hearing and whether he wishes to waive that right and

2  agree to proceed by video conference?

3           MR. MACLEAN:  I have talked to him about that and

4  he wishes to proceed by video conference today.

5           THE COURT:  If he confirms the waiver of his

6  in-court proceedings, do you believe the waiver will have been

7  entered knowingly and voluntarily?

8           MR. MACLEAN:  Yes, I do.

9           THE COURT:  Thank you.  Mr. Pelkey, I'm going to

10  ask you some same -- some questions on that same topic.  First

11  of all, do you understand that you're not required to proceed

12  by video conference, that you do have a right to an in-court,

13  in-person hearing?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Do you understand that even though

16  we're convened at this moment by video conference, if you told

17  me now that you wanted an in-court hearing, I would stop this

18  proceeding and we would schedule an in-court proceeding

19  hopefully within the next few days?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Have you had a chance to speak with

22  Mr. Maclean about your right to an in-court, in-person hearing?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Mr. Maclean has represented to the

25  Court that he expects that you will waive that right and agree

1    to proceed by video conference; is that what you have decided

2    to do?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Has anyone made any promises to you in

5    an effort to convince you to give up your right to an in-court,

6    in-person hearing?

7                THE DEFENDANT:  No, Your Honor.

8                THE COURT:  Has anyone threatened or pressured you

9    in anyway to give up that right?

10                THE DEFENDANT:  No, Your Honor.

11                THE COURT:  Do you understand that if we proceed

12    by video conference that any decisions that I make during this

13    hearing will be just as legally binding upon you as if we had

14    conducted the hearing in-person in the courtroom?

15                THE DEFENDANT:  Yes, Your Honor.

16                THE COURT:  Given what I've discussed with you and

17    what you might have discussed with Mr. Maclean, do you still

18    wish to give up your right to an in-court, in-person hearing

19    and agree to proceed by video conference?

20                THE DEFENDANT:  Yes, Your Honor.

21                THE COURT:  Mr. Wolff, what is the Government's

22    position as to whether it's appropriate to proceed by video

23    conference today?

24                MR. WOLFF:  Your Honor, the Government believes

25    that it is appropriate to proceed by video and does not object

1    to doing so.

2                    THE COURT:  Thank you.  Mr. Maclean, what is your

3    view?

4                    MR. MACLEAN:  I agree with the Government.

5                    THE COURT:  Based upon my inquiry of Mr. Pelkey, I

6    do find that he has knowingly and voluntarily waived his right

7    to be physically present for an in-court, in-person hearing

8    because in accordance with the CARES Act, Mr. Pelkey has agreed

9    to proceed by video conference after consultation with counsel.

10                   I also find that it's appropriate to proceed by

11   video conference given the health risks that could be presented

12   to all who would have to convene in the courtroom for an

13   in-court proceeding.  I also find that it would serve the ends

14   of justice to proceed by video conference.  We are here, as I

15   mentioned, for a preliminary hearing and if probable cause is

16   found, then a hearing on the Government's motion for detention,

17   and if either the Government cannot establish probable cause or

18   it turned out even if the Government did that Mr. Pelkey should

19   be released on bail, if the matter were delayed for an

20   in-court, in-person hearing then Mr. Pelkey would have remained

21   in jail longer than by law he was required.

22                   So, I find no reason to delay the proceeding and

23   every reason to proceed today by video conference and authorize

24   Mr. Pelkey to do so.

25                   As I mentioned at the start, we are here for a

1  preliminary hearing initially and then, if probable cause is

2  found, then to turn to a hearing on the Government's motion for

3  detention.  If probable cause is not found, then that means at

4  the present time there would be no further proceedings.

5            Mr. Maclean, is the defendant, Mr. Pelkey, still

6  seeking a preliminary hearing today?

7            MR. MACLEAN:  No, he's not.  He's willing to waive

8  probable cause, Your Honor.

9            THE COURT:  And Mr. Pelkey, Mr. Maclean has

10  represented that you intend to waive the preliminary hearing;

11  is that true?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  Do you understand that if you waived

14  the hearing, I will find that there's probable cause to believe

15  you committed the offense as alleged in the complaint and then

16  we'll proceed to the next step, which would be a hearing on the

17  Government's motion for detention; do you understand that?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Do you have some documents in front of

20  you that were provided to you by the jail that the court

21  provided the jail?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Can you locate among those documents

24  the document that is entitled waiver of preliminary hearing?

25            THE DEFENDANT:  Yes, Your Honor.  It's right here.

```
 1              THE COURT:  And have you had a chance to read
 2    that?
 3              THE DEFENDANT:  Uh, yes, Your Honor.
 4              THE COURT:  And do you understand that what
 5    essentially that says is what you just told me here orally,
 6    that you understand that you have a right to a hearing and that
 7    you're waiving the right to the preliminary hearing?
 8              THE DEFENDANT:  Yes, Your Honor.
 9              THE COURT:  Ordinarily if we were together in the
10    courtroom and it was your intention to waive the preliminary
11    hearing and you reviewed that form and understood it, you would
12    sign it confirming your waiver and provide it to the Court.
13    Because we are in different locations, you cannot do that.  You
14    cannot sign it and hand it to the Court.  However, you can
15    authorize the clerk if you wish to enter your electronic
16    signature on the waiver.  If you did so, she would type on the
17    line for your signature slash S slash and then your name.
18              If she did that with your authority and consent,
19    it would be just as if you had written your signature yourself
20    and would constitute a written waiver of your right to the
21    preliminary hearing; do you understand that?
22              THE DEFENDANT:  Yes, Your Honor.
23              THE COURT:  Do you wish to authorize the clerk to
24    enter your electronic signature on the waiver?
25              THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:  The clerk will do so.  And based upon

2    my inquiry of Mr. Pelkey, I do find that he has knowingly and

3    voluntarily waived his right to the preliminary hearing and

4    therefore find probable cause to believe that he committed the

5    offense as alleged.

6          The next issue, Mr. Pelkey, is whether you would

7    be released on bail or held in custody pending conclusion of

8    the matter.  The Government has filed a motion asking that you

9    be held in custody until the matter's concluded.  You have a

10   right to a hearing on that motion -- that's what we scheduled

11   today -- and in the event that there was a probable cause

12   finding, the issues at the hearing would be whether there are

13   conditions upon which you could be released that would

14   reasonably assure your attendance at future court hearings and

15   provide for the safety of the community.

16         Mr. Maclean, does Mr. Pelkey wish the Court to

17   conduct a hearing today on the Government's motion for

18   detention?

19         MR. MACLEAN:  Yes, Your Honor, he does.

20         THE COURT:  We will proceed with that hearing now

21   then.  Mr. Wolff, is the Government ready to proceed?

22         MR. WOLFF:  Yes, Your Honor.

23         THE COURT:  And do you intend to proceed by

24   proffer or through testimonial evidence or --

25         MR. WOLFF:  By proffer, Your Honor.  In terms of

1    any other evidence, in addition to the affidavit supporting the

2    criminal complaint, which is obviously part of the record in

3    this case, the Pretrial -- the contents of the Pretrial

4    Services Report and the addendum, the Government did provide

5    the Court with a declaration from FBI Special Agent Garrett

6    Drew and the Government does seek to admit that as an exhibit

7    for this -- for the hearing today.

8         THE COURT:  And I understand that there's a motion

9    to seal there as well?

10        MR. WOLFF:  There is, Your Honor, for a limited

11   30-day period, that's correct.

12        THE COURT:  Mr. Maclean, any objection to the

13   introduction of the declaration and any objection to the

14   Government's motion to seal?

15        MR. MACLEAN:  No objection to the introduction of

16   the statement or to the motion to seal.

17        THE COURT:  My understanding as well the motion

18   will be sealed again for the limited period of 30 days; is that

19   correct?

20        MR. WOLFF:  That's correct, Your Honor.

21        THE COURT:  All right.  Well, I will admit the

22   declaration into evidence and based on my review of the motion

23   to seal, I do find that there are grounds to seal it for the

24   limited period that the Government has requested for the

25   reasons identified by the Government and I'll grant that motion

1  to seal for a period of 30 days.

2          Mr. Wolff, you may proceed on the Government's

3  motion.

4          MR. WOLFF:  Thank you, Your Honor.  I mean in

5  terms of evidence, that is the extent of the Government's

6  evidence.  The Government certainly is ready to argue from that

7  evidence if the Court wishes.  I don't know if -- I'm not sure

8  if the defense intends to present any evidence or not, but

9  evidence-wise, the Government rests, Your Honor.

10          THE COURT:  And again, you're talking the evidence

11  based on the affidavit in support of the request -- the

12  probable cause finding on the complaint, the Pretrial Services

13  Report and addendum and the declaration?

14          MR. WOLFF:  That's correct, Your Honor.

15          THE COURT:  Thank you.  Mr. Maclean.

16          MR. MACLEAN:  Your Honor, we don't have any

17  additional evidence to offer, although we do want to argue that

18  release would be appropriate and we're ready to do that now or

19  whenever the Court pleases.

20          THE COURT:  You may proceed and I'll hear from the

21  Government in rebuttal.  That may be the appropriate way to

22  proceed.

23          MR. MACLEAN:  Your Honor, as the Court knows, my

24  client is very young.  He just turned 18 in November at the end

25  of last year.  As an adult, he has no criminal history,

1    although he does have a juvenile record that does not involve

2    any felonies and has spent some time in detention as a

3    juvenile, although nothing that would suggest that he's

4    ineligible for release under these circumstances.

5            I think what's notable is he's a bright young man,

6    Your Honor.  He has a very loving and supportive family.

7    He's -- except for his periods of juvenile detention, he has

8    been residing in the same home since he was in the first or

9    second grade and he was -- I think that's maybe 13 or 14 years.

10   He lives with his mother who cares for him very deeply.  He

11   lives with his grandmother and his grandfather and his 16 year

12   old autistic brother.

13           It's a loving, supportive family.  They're willing

14   to take him back in, so he has a warm, loving home to accept

15   him back into and we believe there are conditions that will

16   both ensure that he will attend future court proceedings and

17   also ensure the protection of the public.  Some of those

18   conditions would involve electronic monitoring so we can keep

19   tabs on where he is.  We also think that a prohibition on use

20   of the Internet would be appropriate given the circumstances of

21   this case.

22           We feel that conditions of house arrest would be

23   appropriate, except for any mental health counseling and

24   treatment, and we do plan to be exploring that and getting that

25   set up, and also any employment that would be in the local

1  Waterville area near his home.  We believe that, given the

2  totality of the circumstances, those conditions are both

3  reasonable and appropriate and the Court should order them.

4          THE COURT:  Thank you.  Mr. Wolff.

5          MR. WOLFF:  Thank you, Your Honor.  Your Honor, I

6  certainly acknowledge that this is a rather unusual case given

7  the age of Mr. Pelkey.  We certainly do not see many 18 year

8  old defendants in this court, but I do think, Your Honor, when

9  you consider all the factors that the Court needs to consider

10 under Section 3142(g) that detention is the appropriate course

11 here.

12          In terms of the nature and circumstances of the

13 offense, this is an offense that involves destructive devices,

14 which is one of the particular types of offenses that the --

15 that the statute points the Court to when considering the type

16 of offense involved, and so that in itself certainly indicates

17 some degree of danger, but I would submit that we have much

18 more here, Your Honor.

19          As you can see from the declaration of Special

20 Agent Drew, based on the investigation that has occurred to

21 date it appears that these destructive devices that Mr. Pelkey

22 was in possession of, found in possession of in his bedroom

23 during the course of the execution of the search warrant, were

24 intended to be used in a calculated act of violence that was

25 designed to take many lives.

1          The Court can see from the declaration that the

2    FBI has spoken to two individuals who corresponded online with

3    an individual that they knew to be Abdullah, later identified

4    as Mr. Pelkey, and that Juvenile No. 1 described a plot that

5    he, Abdullah and another individual had devised that involved

6    going to a mosque in Chicago and committing, frankly, mass

7    murder; separating the men in this mosque from the women and

8    children and killing all the men, potentially moving on to

9    another mosque or synagogue and doing the same thing and then

10   ultimately culminating in being shot by police.  Juvenile No. 1

11   specifically indicates to the investigators that Abdullah said

12   he had built an explosive device to get more people.

13          There's another juvenile, Your Honor, Juvenile No.

14   2, who had indicated that he had also corresponded online with

15   Abdullah and that Abdullah had indicated he had gathered

16   material to create fireworks to attack someone and he wanted to

17   die fighting for Allah.  So, Your Honor, when you look at the

18   context beyond the mere possession of destructive devices, this

19   is a very serious, very disturbing set of events that Mr.

20   Pelkey appears to have been involved in.

21          With respect to the weight of the evidence, I

22   would submit that it's strong.  As the Court is aware, this

23   case started with search warrants that were issued by this

24   Court, led to the discovery of the destructive devices in Mr.

25   Pelkey's bedroom.  He indicated that he was, in fact, a user of

1    the Instagram account that these other individuals had

2    communicated with Abdullah over Instagram and so, Your Honor, I

3    think this is, from an evidentiary standpoint, a strong case.

4                In terms of Mr. Pelkey's history and

5    characteristics, obviously he is a young man, but we also know,

6    Your Honor, that it appears that he has an ideology that he's

7    developed where he has aligned himself with radical thinking

8    under which he is willing to commit acts of violence and acts

9    of violence that would culminate with him martyring himself in

10   the course of committing those acts of violence.

11               He does have a criminal history.  It is not a

12   major criminal history, but I think perhaps the most

13   significant aspect of that criminal history is that he has

14   repeatedly violated the conditions of his probation on the

15   several times that he's been under probation and committing new

16   criminal conduct while on probation.

17               He has a significant mental health history, Your

18   Honor, a significant substance abuse history and he does not

19   have a history of employment.  Obviously, at the age of 18 you

20   wouldn't expect him to have a major history of employment, but

21   he's not currently employed and does not have much of a history

22   of employment.

23               When the Court looks at the nature of the danger

24   that Mr. Pelkey poses, this again, when you look at the

25   evidence that the Court has before it, particularly the

1    declaration of Special Agent Drew and the affidavit in support

2    of the criminal complaint, the picture that is drawn of Mr.

3    Pelkey is that he is a young man who is, again, willing to

4    commit acts of violence and willing to die in the process.  And

5    as the Court knows, any condition is contingent on an

6    individual being willing to adhere to that condition, and when

7    you have an individual who, because of whatever beliefs he

8    appears to hold and the actions that he's taken to show

9    adherence to those beliefs, a person in that position is

10    virtually -- I would submit virtually impossible to supervise

11    because of no demonstrated willingness to adhere to conditions

12    of release and for that reason, Your Honor, for all those

13    reasons, we believe that there is not only a risk of

14    non-appearance here, but a very significant of risk of danger

15    to the community and to -- and frankly, as the probation office

16    indicates, also a very real danger to anybody supervising Mr.

17    Pelkey and that for those reasons detention is appropriate.

18            THE COURT:  Mr. Maclean, anything you'd like to

19    say in follow-up?

20            MR. MACLEAN:  We certainly see the case very

21    differently from the Government, Your Honor.  I think as the

22    Court can see from the materials provided, my client's been

23    completely cooperative and he's been cooperative from the

24    outset.

25            He certainly disavowed any of the desires or

1    intentions that the Government has suggested during this

2    detention hearing and is fully committed to adhering to

3    whatever strict conditions the Court sets here.

4         We -- and notwithstanding, I think, posturing to

5    some degree that you'll hear from the Government with respect

6    to its view of the facts, this is a much more mundane situation

7    and we believe the strict conditions that I've suggested, the

8    Court can be assured that the defendant will be appearing for

9    all court appearances and he is no danger at all to the public.

10        THE COURT:  Thank you.  Ms. Kuhn, is there

11   anything further that probation would like to add?

12        PROBATION OFFICER:  Nothing from me, Your Honor,

13   unless there's something specifically you'd like to ask me.

14        THE COURT:  I'm all set.  Thank you.  Did the

15   Government wish to ask probation any questions?

16        MR. WOLFF:  No, Your Honor.

17        THE COURT:  Mr. Maclean, from the defendant?

18        MR. MACLEAN:  No.

19        THE COURT:  Thank you, Officer Kuhn.  Then as the

20   parties have both referenced, there are certain factors that

21   the Court must consider by statute when determining whether to

22   grant the Government's motion or to issue an order releasing

23   Mr. Pelkey on conditions.  Those factors are set forth in

24   Section 3142(g), and as I review them, as counsel have

25   referenced, we begin with the nature and circumstances of the

1    offense charged, and this is, as the Government has noted, one

2    of the items or one of the types of offenses that is

3    specifically referenced in the statute, that the statute

4    references for the Court's consideration offenses that might

5    involve destructive devices.  I think the reason for that is

6    apparent, that somebody that is charged with a crime that

7    involves a destructive device, it does raise the concerns about

8    public safety and those concerns, given the nature of the

9    devices found in Mr. Pelkey's possession or in his residence at

10   the time of the search, do generate significant safety

11   concerns.

12          The weight of the evidence is another factor the

13   Court must consider.  I recognize that for purposes of today,

14   the defendant has not directly challenged the evidence nor is

15   he required to.  The Court is left with the affidavit in

16   support of the complaint as the principal evidence in the case

17   and that evidence, when viewed particularly with no

18   counterevidence, suggests that the weight of the evidence

19   rotates in favor of the Government's request.

20          The history and characteristics of the defendant

21   are also factors that the Court must consider.  Both parties

22   have referenced his age, which given his relative youth would

23   suggest that maybe conditions would be appropriate if that were

24   the only consideration when looking at the defendant's history

25   and characteristics.

1              There is, as Mr. Wolff has referenced, a substance

2    abuse -- a substance use issue.  There's also evidence, or as

3    part of the Pretrial Services Report, which suggest there have

4    been violations of conditions to which he was subject in the

5    past.  All of those factors are for the Court's consideration

6    and would suggest concerns about releasing him on conditions.

7              And then there's the nature and seriousness of any

8    danger that is posed to a person or the community, and given

9    the nature of the charge here, the devices that were found,

10   devices that, at least as described in the affidavit, could

11   cause significant harm to multiple people and the proffered

12   evidence, which is supported by the declaration, the proffered

13   evidence by the Government supported by the declarations to

14   what the Government believes and has evidence from the

15   Government's perspective to support the -- its belief that Mr.

16   Pelkey was involved in activity that would -- was designed to

17   produce significant injury to many people, the seriousness of

18   the danger is a major concern to the Court in determining

19   whether there are conditions upon which Mr. Pelkey can be

20   released.

21             And when I consider all of those -- all of the

22   factors, that is, the nature and circumstances of the offense

23   charged, the weight of the evidence, history and

24   characteristics of the defendant and the nature and seriousness

25   of the danger, those all raise concerns about Mr. Pelkey's

1    appearance to future court events given the significance of the

2    charges and potential consequences, as well as the danger to

3    the community, and I find that there are no conditions that

4    would adequately or reasonably address the appearance issue and

5    would adequately address the safety concern.

6         And as to the finding regarding safety, I find

7    that by clear and convincing evidence the facts establish that

8    there are no conditions that would reasonably assure the safety

9    of any person or the community, and therefore grant the

10   Government's motion for detention and order Mr. Pelkey be

11   detained pending conclusion of this matter subject to his

12   right, pursuant to statute, to ask the Court to revisit the

13   issue should new information, information that's not available

14   to Mr. Pelkey and his counsel today, become available in the

15   future.

16        So, just to summarize, Mr. Pelkey has waived his

17   right to the preliminary hearing.  The Court has found probable

18   cause therefore that Mr. Pelkey committed the offense as

19   alleged in the complaint, and on the Government's motion after

20   hearing, the Government grants -- the Court grants the

21   Government's motion for detention and orders that Mr. Pelkey be

22   detained.

23        Mr. Wolff, are there any other issues the

24   Government would like the Court to address today?

25        MR. WOLFF:  No, Your Honor.

1          THE COURT:  Mr. Maclean, any other issues the

2    defendant would like the Court to address today?

3          MR. MACLEAN:  No.  Thank you, Your Honor.

4          THE COURT:  Thank you.  Officer Kuhn, any issues

5    that probation would like the Court to address today?

6          PROBATION OFFICER:  No.  Thank you, Your Honor.

7          THE COURT:  Thank you all.  We'll be in recess.

8               (End of proceeding)

9          **C E R T I F I C A T I O N**

10   I, Dennis Ford, Official Court Reporter for the United States

11   District Court, District of Maine, certify that the foregoing

12   is a correct transcript from the record of proceedings in the

13   above-entitled matter.

14   Dated:  February 24, 2022

15               /s/ Dennis Ford

16               Official Court Reporter

17

18

19

20

21

22

23

24

25